IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:15-cr-00093 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER DENYING** |
| | : | **DEFENDANT'S MOTION TO** |
| BRIAN SIMMS, | : | **SUPPRESS EVIDENCE** |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion to Suppress Evidence (Doc. 13). The United States filed a memorandum in opposition (Doc. 15), and, at the Court's request after review of these pleadings, a supplemental memorandum addressing the applicability of *Northrup v. City of Toledo*, 785 F.3d 1128 (6th Cir. 2015) and *Deffert v. Moe*, --- F. Supp. 3d ---, 2015 WL 3460104 (W.D. Mich. June 1, 2015).  A hearing then took place on November 9, 2015.  For the reasons that follow, Defendant's motion will be **DENIED**.

I.     **FACTS**[1]

Patrol Officer Brian Gleason is an eight-year veteran of the City of Hamilton, Ohio police force.  His partner, Patrol Officer Chris Gibson, has served for nine years.   They are assigned to District 2, the district with the highest call volume of the seven located within the City of Hamilton, and to "C" shift, which begins at 11:00 p.m.  Because of the extensive number of arrests for assaults, weapons violations and drug trafficking, all officers that patrol in District 2—whether during the day or at night—patrol in pairs.

---

[1] The facts are drawn from the testimony adduced at the November 9, 2015 hearing.

On June 11, 2015, at approximately 11:20 p.m., Officers Gleason and Gibson were dispatched to the McDonald's restaurant located on Martin Luther King Jr. Boulevard (between High and Court Streets). They were advised by the 911 operator that a caller had reported seeing a male driver with a gun tucked in the waistband of his pants. The caller described the vehicle as a dark-colored Honda, provided the license plate and indicated that the individual with the gun remained in the parking lot.

Because their shift had just begun, Officers Gleason and Gibson responded from headquarters. They arrived within minutes, travelling down High and turning left on MLK. From that vantage, they could see the rear of a dark-colored Honda and noted that its license plate was an exact match with the description provided by the dispatch.[2] However, they could not discern the number of occupants in the car. The officers then turned left on Court and entered the parking lot, pulling their cruiser up to the Honda that had been backed into its parking space. The driver's seat was empty, but a white female sat in the front passenger seat with Defendant—a black male—in the back seat, driver's side. Gibson, as the driver of the cruiser, exited his vehicle on the left and approached the female in the front seat. Gleason, as the passenger in the cruiser, exited his vehicle on the right and walked around to the left rear of the Honda.

Gleason testified that he informed Defendant that they had received a 911 call about a man with a gun at McDonald's and asked him to step out of the car. Gleason further testified that Defendant denied having a gun and said he was "just eating." However, Defendant then put both hands to his waist and turned away from Gleason. Fearing that Defendant was reaching for a firearm, Gleason put his left hand on Defendant's shoulder and drew his sidearm. Defendant

---

[2] The 911 operator communicated the license plate sequence as "George Mary George 76 11." Officer Gibson credibly testified that he was able to remember that sequence without writing it down.

2

obeyed Gleason's command to show his hands. By this time, two additional officers had arrived; each took hold of one of Defendant's wrists and eased him down to the ground. Gleason felt along Defendant's waist and retrieved a .380 caliber handgun, loaded with seven rounds of ammunition. Defendant was handcuffed and placed in the squad car. Gleason asked Defendant for his name and birthdate in order to identify him and check for outstanding warrants. Before Defendant was read his *Miranda* rights,[3] Gleason testified that Defendant volunteered that the gun was his and that he kept it for protection.

Defendant is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2).

## II.   ANALYSIS

Defendant moves to suppress any evidence concerning the firearm seized from him as well as any statements made by him concerning ownership of it. He argues both a Fourth and Fifth Amendment violation. The United States counters that the totality of the circumstances supported a *Terry* "stop and frisk" exception to the warrant requirement, and hence the evidence of the loaded handgun found in Defendant's waistband is admissible. Further, the admission by Defendant that he owned the gun and carried it for his personal protection was volunteered by him in a setting in which it was not yet necessary to Mirandize him. The Court finds both positions of the United States to be well-taken.

In order to conduct a permissible *Terry* stop, officers must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Cohen*, 481 F.3d 896, 898-99 (6th Cir. 2007) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968))). To make this assessment, a reviewing court must look at the "totality of the circumstances" to see "whether the detaining officer has a

---

[3] *See Miranda v. Arizona*, 384 US. 436 (1966).

'particularized and objective basis' for suspecting legal wrongdoing." *Id*. at 899 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981))). During a *Terry* stop, a "'reasonable'" search for weapons is permissible if the police officer has "'reason to believe that he is dealing with an armed and dangerous individual[.]'" *United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007) (quoting *Terry*, 392 U.S. at 27)). Absolute certainty that the suspect is armed is not required, but, rather, the issue turns on "'whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (citing *Terry*, 392 U.S. at 27)). Moreover, the suspicion must be specific to the suspect. *Id.* at 494.

On the night in question, having just completed roll call, Officers Gleason and Gibson were advised by the 911 operator of a report of a male with a gun *still present* in the parking lot of a nearby McDonald's. They left headquarters immediately and arrived on the scene within minutes, not pausing even to turn on the computer in their cruiser. The officers found the vehicle described with two individuals inside. They parked their cruiser and approached the vehicle, with Gleason explaining to Defendant that a 911 caller had stated that a male with a gun was sitting in this particular car. Defendant denied possession of a gun and claimed to be "just eating." Gleason then asked him to step out of the vehicle. Rather than comply, Defendant moved both of his hands to the right and turned away from the officer. At this point Gleason pulled his service pistol and ordered Defendant out of the car. The firearm was discovered after a pat down.

The Court concludes that Gleason had reason to believe that Defendant was "armed" based on the very specific information provided by a 911 caller as conveyed by the 911 operator. It is true that the dispatch stated that a male "driver" was reported to have a gun and Defendant

4

was seated in the back seat behind the *empty* driver's seat. This distinction, though, is far less significant than counsel urges. First, the car was parked and Defendant plausibly could have moved from front to back to enjoy his meal. Further, of the two occupants within the car, Defendant was the only male, and "male" was the single, definitive characteristic of the suspect, the one on which the officers appropriately focused. The Court also concludes that Gleason had reason to believe that Defendant was "dangerous" based on him turning away from the officer and moving both hands toward his waist as if to draw a weapon, all of this occurring late at night in a high-crime neighborhood. Without question, Officer Gleason, given his years of professional experience, was "reasonably prudent" in his determination that his safety, as well as the safety of the patrons in the McDonald's parking lot, was at risk based on Defendant's behavior.

  Both Simms and the United States cite *Wilson*, *supra*, in support of their respective arguments. In that case, a local sheriff and his partner stopped a car in which neither the driver nor the passenger (Wilson) were wearing seatbelts in violation of state law. The driver stated that he lived in a city different from the one that appeared on his license. He began to ramble, eventually admitting that he had been incarcerated for a federal gun charge, and both he and Wilson were "acting extremely nervous." 506 F.3d at 491. The sheriff then ran the vehicle's license plate and discovered that the driver was not its owner. Accordingly, he asked the driver to produce a registration and proof of insurance. While the driver and Wilson were searching for these documents, Wilson also was talking on his cell phone. At the sheriff's request, Wilson ended the call, but then ominously stated to the driver that, "They're coming." *Id.* When neither the driver nor Wilson was able to produce the registration or the insurance card, the sheriff requested permission to search the vehicle and asked them both to step out. Both were patted

down; a package fell from Wilson's pant leg on to the ground, the contents of which tested positive for cocaine. Both were charged with possession with intent to distribute, and both moved to suppress evidence of the cocaine. The district court denied the motion as to the driver but granted it as to Wilson, concluding that the United States had failed to show that the sheriff had a "reasonable belief" that Wilson was "armed and dangerous" before conducting the pat down. *Id.*

In affirming, the Sixth Circuit noted that Wilson's proximity to the driver was relevant, but could not be dispositive inasmuch as it had previously rejected the "automatic companion" rule. *Id.* at 494-95. Nor was the suspicious conduct of the driver or the fact that Wilson (as passenger) did not own the car. Finally, the Sixth Circuit rejected Wilson's "extreme nervousness" as observed by the sheriff, concluding that, "[n]ervous behavior, standing alone, is not enough to justify a *Terry* search. *Id.* at 495 (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)).

The facts regarding Defendant Simms as "passenger" are dramatically more compelling. Officers Gleason and Gibson did not conduct a routine traffic stop, but, instead, responded to a 911 call that warned that a male—inside a particular car parked in a particular location where crime typically is rampant—had a gun. When the officers arrived, a male was seen inside that very car. He denied possession of a gun, but then turned away from the officer and made a furtive move toward his waist. At this point, to protect himself and others from danger, Officer Gleason responsibly, and lawfully, ordered Defendant out of the car, patted him down and recovered a firearm. The "reasonably prudent man" standard, as articulated and applied in *Wilson*, categorically undercuts the premise of Defendant's motion.

Finally, Officer Gleason testified that, once inside the squad car, the only questions he asked Defendant were his name and his date of birth.  No contrary testimony was introduced and counsel does not argue that it was necessary to Mirandize his client for this limited purpose of identification.  Accordingly, the Court determines that Defendant's subsequent statement that he owned the gun and carried it for protection was voluntary and is therefore admissible.

### III.     CONCLUSION

For the reasons articulated above, Defendant's Motion to Suppress Evidence (Doc. 13) is **DENIED** in its entirety.

**IT IS SO ORDERED**.

Dated: _____                    ___s/Susan J. Dlott_____
                                     Judge Susan J. Dlott
                                     United States District Court