IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:15-cr-00093 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **ORDER DENYING** |
| | : | **DEFENDANT'S MOTION TO** |
| BRIAN SIMMS, | : | **RECONSIDER** |
| | : | |
| Defendant. | : | |

Following a hearing that took place on November 9, 2015, this Court issued its Order Denying Defendant's Motion to Suppress (Doc. 18). Shortly thereafter, Defendant filed the instant Motion to Reopen Evidence on Suppression Hearing and for Reconsideration of the Court's Ruling (Doc. 20). Upon review of Defendant's brief and following a pretrial conference held with counsel on November 23, 2015, the Court agreed to reopen the evidence. To this end, a second hearing took place on January 6, 2016.

For the reasons that follow, the Court concludes that its original ruling is correct and, accordingly, Defendant's motion seeking reconsideration will be **DENIED**.

I. BACKGROUND FACTS[1]

A. The November 9, 2015 Hearing

At the November hearing, Patrol Officer Brian Gleason testified that he and his partner, Patrol Officer Chris Gibson, were dispatched to the McDonald's restaurant located on Martin Luther King Jr. Boulevard in Hamilton, Ohio. The 911 operator advised that a caller reported

---

[1] The background facts are drawn from the testimony given and the exhibits introduced into evidence at both the first and second hearings.

1

seeing a male driver with a gun tucked in the waistband of his pants.  The caller described the vehicle as a dark-colored Honda, provided the license plate, and indicated that the individual with the gun remained in the parking lot.  The officers arrived within minutes, spotting the Honda and noting that its license plate was an exact match with the description provided by the dispatch.  The driver's seat was empty, but a white female sat in the front passenger seat with Defendant—a black male—in the back seat, driver's side.  Gleason testified that he informed Defendant that they were responding to a 911 call about a man with a gun at McDonald's and asked him to step out of the car.  Gleason further testified that Defendant denied having a gun, and said he was "just eating."  However, Defendant then put both hands to his waist and turned away from Gleason.  Fearing that Defendant was reaching for a firearm, Gleason put his left hand on Defendant's shoulder and drew his sidearm.  Defendant was removed from the vehicle and patted down.  A .380 caliber handgun, loaded with seven rounds of ammunition, was found in his waistband.  Gleason also testified that, before he was read his *Miranda* rights,[2] Defendant volunteered that the gun was his and that he kept it for protection.

On cross-examination, Officer Gleason was shown the written dispatch log related to the McDonald's run and asked to focus his attention on the 23:35:18 entry:

> LIC GMG 7611 DRK COLORED HONDA **MALE DRIVER HAD A GUN IN HIS PANTS THE GUN IS ALL BLACK**

(Defendant's Exh. 2 (emphasis added).)  Gleason testified that he did not see this written text in advance of arriving on scene because the computer in their cruiser was off.  Gibson likewise testified that the computer was off.  Gleason also testified that he did not ask Defendant or the female in the front passenger seat any questions with respect to the whereabouts of the driver of the vehicle.  Gibson confirmed on cross-examination that he, too, did not ask about the driver.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

At the conclusion of the November hearing, Defendant argued that the firearm seized from him should be suppressed because the totality of the circumstances did not support a *Terry* "stop and frisk" exception[3] to the warrant requirement. Counsel urged the Court to consider the fact that the audio recording of the dispatch by the 911 operator clearly advised the officers to check the parking lot for the male *driver* of a dark-colored Honda who was seen with a gun. (*See* Defendant's Exh. 1.) Inasmuch as Defendant was sitting in the back—as opposed to the driver's—seat of the vehicle when the officers approached, counsel reasoned that their search for a weapon was improper. They had no reason to believe that their safety, or the safety of others, was in danger vis-à-vis him as *passenger*. *See United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007).

In a written order docketed on November 13, 2015, the Court denied Defendant's motion (Doc. 18). The Court directly addressed the driver versus passenger issue:

> The Court concludes that Gleason had reason to believe that Defendant was "armed" based on the very specific information provided by a 911 caller as conveyed by the 911 operator. **It is true that the dispatch stated that a male "driver" was reported to have a gun and Defendant was seated in the back seat behind the *empty* driver's seat. This distinction, though, is far less significant than counsel urges. First, the car was parked and Defendant plausibly could have moved from front to back to enjoy his meal. Further, of the two occupants within the car, Defendant was the only male, and "male" was the single, definitive characteristic of the suspect, the one on which the officers appropriately focused.** The Court also concludes that Gleason had reason to believe that Defendant was "dangerous" based on him turning away from the officer and moving both hands toward his waist as if to draw a weapon, all of this occurring late at night in a high-crime neighborhood. Without question, Officer Gleason, given his years of professional experience, was "reasonably prudent" in his determination that his safety, as well as the safety of the patrons in the McDonald's parking lot, was at risk based on Defendant's behavior.

(Doc. 18 at PageID 47-48 (emphasis added).)

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

### B. The January 6, 2016 Hearing

Defendant filed the instant motion on November 20, 2015.  He petitioned the Court to reopen the hearing for the purpose of introducing evidence proving that the computer in the cruiser driven by Officers Gleason and Gibson was in fact *on* at the time they responded to the McDonald's run.  Counsel argues that their very specific representation to the contrary during the November hearing undermines their credibility, on which the Court necessarily relied in reaching its original decision.  (*See* Doc. 20 at PageID 75.)

At the January hearing, Officer Gleason testified that the document titled "BUTLER COUNTY COMMUNICATIONS Activity Report For Units" lists a login time of 23:20:45 on June 11, 2015.  (*See* Defendant's Exh. 4, line 2.)  This time clearly precedes the time of dispatch at 23:35:18 (Defendant's Exh. 2), as well as the time that he and Officer Gibson arrived on scene at 23:58:30 (Defendant's Exh. 4, line 9).  When asked at the January hearing about this discrepancy, Officer Gleason acknowledged that his prior testimony on this point was obviously incorrect.  Regardless of whether the computer was on, however, Gleason testified at the January hearing that he proceeded only on the information he *heard* from the dispatch operator as opposed to any notes she may have typed simultaneously into the system.  Gleason denied using the computer to run the license plate through the National Crime Information Center ("NCIC") at 23:38:30 (*id.*, line 6) or entering any information into the system himself.

Officer Gibson gave similar testimony.  As driver of the cruiser, he expressly denied using, or even looking at, the computer prior to arriving on scene for fear of causing an accident.

## II.   ANALYSIS

Defendant's Exhibit 1, the audio recording of the dispatch, was played during the November hearing.  In addition, as part of its deliberations, the Court has listened to the

4

broadcast many more times. The dispatch distinctly relays two adjectives to help identify the suspect: "male" and "driver." The dispatch also relayed the particular make and color of the vehicle in which the suspect was sitting (dark-colored Honda), its license plate (George Mary George 76 11), and its location (the McDonald's parking lot). Officers Gleason and Gibson both testified, in essence, that, with respect to the description of the suspect, they heard "male" louder than they heard "driver." Thus, when they saw Defendant in the vehicle, even though he was not in the driver's seat, according to Gleason they put "two and two together" and questioned him first. As the Court stated in its initial Order, this focus was entirely appropriate. Of great significance is the fact that the vehicle was *parked*. If a car is in operation, status as "driver" is fixed. But if a car is parked, status as "driver" is variable. The driver can exit the vehicle or the driver can change seats. Indeed, any one of the individuals sitting in the passenger seats could have been, or can become, "driver." Also fixed, of course, is status as "male." And Defendant was the only male sitting in the vehicle.

The Court has carefully evaluated the demeanor of the Officers Gleason and Gibson and does not believe they intentionally lied with respect to whether the computer inside their cruiser was on. Regardless, even if either of them conceded that they *had* seen the visual "MALE DRIVER HAD A GUN IN HIS PANTS," considering the totality of the circumstances the Court remains convinced that Officer Gleason responsibly and lawfully ordered Defendant out of the car and patted him down, leading to recovery of the subject firearm. The Court appreciates the very able argument of defense counsel, but is not persuaded by it.

### III. CONCLUSION

For the reasons articulated above, Defendant's Motion for Reconsideration (Doc. 20) of the Court's November 13, 2015 Order (Doc. 18) is **DENIED**.

**IT IS SO ORDERED**.


Dated:  January 11, 2016           S/Susan J. Dlott_____
                                   Judge Susan J. Dlott
                                   United States District Court